**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:                                          Case No. 24-12797-RAM

7233 LOS PINOS, LLC                             Chapter 11

　　　　Debtor.
_____/


**CREDITOR LOS PINOS ACQUISITION, LLC'S EXPEDITED (1) MOTION TO**
**DISMISS BANKRUPTCY AS A "BAD FAITH" FILING AND FOR OTHER GROUNDS**
**CONSTITUTING "CAUSE"; (2) MOTION FOR ATTORNEYS' FEES AND**
**SANCTIONS AGAINST DEBTOR AND DEBTOR'S PRINCIPALS;**
**(3) ALTERNATIVELY, MOTION TO ABSTAIN; (4) ALTERNATIVELY, MOTION**
**FOR STAY RELIEF; AND (5) MOTION FOR JUDICIAL NOTICE**

**\*Movant respectfully requests that a hearing on this**
**Motion be set or discussed on April 18, 2024 at 10:00 a.m. with**
**Debtor's Counsel's Expedited Motion to Withdraw [DE. Nos. 18 & 19]**
**or as soon as this Court's calendar permits.**

Respectfully submitted,

_/s/ Jason R. Alderman, Esq._
Florida Bar No. 0172375
Jason R. Alderman
The Alderman Law Firm
9999 NE 2nd Ave, Suite 211
Miami Shores, Fl 33138
jalderman@thealdermanlawfirm.com
_Counsel for Creditor_
_Los Pinos Acquisition, LLC_

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT** ................................. 1

**RELEVANT PROCEDURAL BACKGROUND AND STATEMENT OF FACTS** .............. 3

  A.  The Underlying Loan Transaction,  Property, and Foreclosure Proceedings. ................... 3

  B.  The SEC Litigation, Receivership Order, Asset Freeze Order and Other Matters. ........... 6

    1.  The SEC Complaint.......................................................................... 6

    2.  The Asset Freeze and Receivership Orders........................................... 7

    3.  R. Kapoor's Yacht Is Arrested and Foreclosure Proceedings Initiated...................... 8

  C.  Framing of the Dispute between the SEC Receiver and Debtor: Kapoors' Claim of Tenancy By Entirety for Net Sale Proceeds of Debtor's Property. ................... 9

  D.  The Property and Debtor's Filings...................................................................... 10

**MOTION TO TAKE JUDICIAL NOTICE** ................................................................. 12

**MOTION TO DISMISS AS "BAD FAITH" FILING AND FOR CAUSE** ........................... 12

  A.  Dismissal Under Section 1112(b) of the Bankruptcy Code as a "Bad Faith" Filing is Warranted.......................................................................................................... 12

    1.  The Legal Standard for Determining "Bad Faith." ..................................... 12

    2.  Debtor Seeks to Avoid and Leverage the SEC Receiver and Movant by Invoking the Automatic Stay Provisions of the Code when the District Court Indicated It Would Not Be Ruling on R. Kapoor's Motion for Sale Until Likely After a Receiver Was Appointed in the State Court Litigation. ................... 15

    3.  Debtor's Post Filing Agreement to Dismiss Upon a De Facto Reorganization Likewise Evidences a "Baid Faith" Filing Intent. ................... 16

    4.  The *Piccadilly* and Other Factors Establish Debtor's "Bad Faith." ........................... 17

  B.  Other Grounds Constitute "Cause" for Dismissal Under Section 1112(b)(4). ................. 21

    1.  Failure to Maintain Insurance....................................................................... 21

    2.  Failure to Obtain "Wet Ink" Signature................................................... 21

    3.  Inability to Reorganize. ................................................................... 22

  C.  Lack of "Authority" to Initiate Bankruptcy Case. ........................................... 22

**MOTION FOR ATTORNEYS' FEES, SANCTIONS AND ORDER BARRING FUTURE FILINGS** .......................................................................................................... 23

**MOTION FOR ABSTENTION** ................................................................................ 24

**MOTION FOR RELIEF FROM AUTOMATIC STAY** ................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Albany Partners, Ltd.*, 749 So.2d 670 (11th Cir. 1984)................................................................. 13

*In re Chariots of Palm Beach, Inc.*, 17-19455-MAM, 2019 WL 4744900 (Bankr. S.D. Fla. Sept. 27, 2019)................................................................................................................................. 12

*In re Dolen*, 265 B.R. 471 (Bankr. M.D. Fla. 2001)..................................................................... 24

*In re Hazelton Trust*, 646 B.R. 855 (Bankr. S.D. Fla. 2022) ...................................................... 21

*In re Kozich*, 406 B.R. 949 (Bankr. S.D. Fla. 2009)................................................................... 23

*In re Little Rest Twelve, Inc.*, 11-31773-AJC, 2015 WL 1318912 (Bankr. S.D. Fla. Mar. 16, 2015).......................................................................................................................................... 23

*In re Loe*, 07-12045-BKC-RBR, 2007 WL 997581 (Bankr. S.D. Fla. Mar. 29, 2007) ............... 12

*In re Outta Control Sportfishing, Inc.*, 642 B.R. 180 (Bankr. S.D. Fla. 2022)...................... 12, 13

*In re Phoenix Land Corp.*, 164 B.R. 174 (Bankr. S.D. Fla. 1993) .............................................. 14

*In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988) ............................................ 13, 14

*In re Soler*, 22-10746-RAM, 2022 WL 1077991 (Bankr. S.D. Fla. Apr. 8, 2022)...................... 23

*In re State St. Houses, Inc.*, 356 F.3d 1345 (11th Cir. 2004)...................................................... 14

*In re Whitehill*, 514 B.R. 687 (Bankr. M.D. Fla. 2014).............................................................. 21

*In re Wynwood Mercantile Corp.*, 81 B.R. 689 (Bankr. S.D. Fla. 1987) ......................... 3, 14, 23

*Slater v. Twon of Albion*, 217 B.R. 394 (W.D.N.Y.197) ............................................................ 24

**Statutes**

11 U.S.C. § 105(a) ...................................................................................................................... 23

11 U.S.C. § 362(d) ........................................................................................................................ 1

11 U.S.C. § 1112(b)(1) .......................................................................................................... passim

Section 1112(b)(4)(F) .................................................................................................................. 21

§ 702.10(1), Fla. Stat.................................................................................................................... 5

**Rules**

Fed. R. Evid. 201(b)(2) ............................................................................................................... 12

Fed. R. Evid. 201(c)(2) ............................................................................................................ 1, 12

Movant, Los Pinos Acquisition, LLC ("Movant"), pursuant to § 11 U.S.C. 1112(b), 11 U.S.C. § 362(d), Bankruptcy Rule 4001, Local Rule 4001-1, Fed. R. Evid. 201(c)(2), and this Court's inherent powers, hereby moves this Court for an order- (1) dismissing Debtor's bankruptcy case as a "bad faith" filing and for other grounds constituting "cause" for dismissal under § 1112(b)(4) of the Bankruptcy Code; (2) awarding Movant its attorneys' fees against Debtor and its principals Kapoor, LLC and Rishi Kapoor; (3) sanctioning Debtor and its principals Kapoor, LLC and Rishi Kapoor for attempting to frustrate the regulatory efforts of the Securities and Exchange Commission and a federal court appointed receiver charged with enforcing an asset freeze order against Debtor's principal Rishi Kapoor; (4) alternatively, motion to abstain from exercising jurisdiction over this case; (5) alternatively, granting Movant stay relief to continue state court foreclosure proceedings; and, (6) motion to take judicial notice of certain federal and state court proceedings.

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

Debtor filed this bankruptcy case as a brazen attempt to circumvent an ***asset freeze order*** issued in a securities fraud case by ***Chief Judge*** Altonaga of the United States District Court for the Southern District of Florida. This asset freeze order expressly prohibits any distribution of any net sale proceeds resulting from Debtor's sale of its sole asset (a luxury property), a sale that could only take place upon a federal court receiver's express permission.

Debtor is owned by Kapoor, LLC, which in turn, is owned by Rishi Kapoor ("R. Kapoor"). R. Kapoor is the defendant in a federal court lawsuit initiated by the Securities and Exchange Commission ("SEC") in the United States District Court for the Southern District of Florida under the case styled: *Securities and Exchange Commission v. Rishi Kapoor, et al.*, Case No. 23-24903-CV-JB ("SEC Litigation"). In the SEC Litigation, Debtor's principal, R. Kapoor, is accused of

perpetrating a $93,000,000 real estate Ponzi scheme in violation of federal, anti-fraud security laws. R. Kapoor is also under criminal investigation for the same conduct. The federal court overseeing the SEC Litigation issued both an asset freeze order and receivership order, appointing Bernice C. Lee of Kozyak Tropin & Throckmorton as the receiver (the "SEC Receiver" or "Receiver"). The SEC Receiver likewise believes Debtor's bankruptcy case was filed in "bad faith."

After a series of unfavorable rulings in both the federal SEC Litigation and a state court foreclosure, *two* business days *after* the District Court indicated it would not be ruling on R. Kapoor's motion to sell the subject property and stay Movant's state foreclosure for at least a month, and on the eve of an order to show cause and receivership motion in state court, Debtor's principal R. Kapoor initiated these proceedings. The purpose of the filing was to frustrate and thwart the SEC Receiver's attempt to enforce the subject asset freeze order by requiring R. Kapoor to place any net sale proceeds into the Receiver's accounts for satisfaction of any future disgorgement order; and, to frustrate and thwart the SEC's objection to J. Frank (R. Kapoor's wife), from serving as a listing broker in violation of a federal court order requiring an "arm's length" sales transaction. These proceedings were also filed to frustrate and thwart Movant's efforts to obtain a state court receiver over the property and hasten its foreclosure case to judgment.

As the ensuing sections demonstrate, Debtor's filing of these proceedings is subject to dismissal as a "bad faith" filing, and other "cause" reasons, under 11 U.S.C. § 1112(b). In the event this Court finds otherwise, Movant requests that this Court abstain from taking jurisdiction over this case and, alternatively, provide stay relief for Movant to prosecute the state foreclosure litigation. Movant seeks attorneys' fees and sanctions against Debtor and Debtor's principals, as precedent exists in the Southern District of Florida holding that, when a debtor files a chapter 11

case to avoid a government's regulatory authority, the filing constitutes a "bad faith" filing and the principal of the debtor may be fined.  *See In re Wynwood Mercantile Corp.*, 81 B.R. 689 (Bankr. S.D. Fla. 1987).

## RELEVANT PROCEDURAL BACKGROUND AND STATEMENT OF FACTS

**A.      The Underlying Loan Transaction,  Property, and Foreclosure Proceedings.**

### (The Loan Transaction)

1.      The transactions at issue in this bankruptcy case between Movant and Debtor are set forth in Movant's *Verified Complaint* in the State Court Foreclosure Proceedings initiated on September 15, 2023, in the Eleventh Judicial for Miami-Dade County, Florida under the case styled:  *Los Pinos Acquisition, LLC v. 7233 Los Pinos, LLC, et al.*, Case No. 2023-023102-CA-01 (the "State Foreclosure Litigation").   Copies of the State Foreclosure Litigation docket and Verified Complaint are attached hereto as Exhibits A and B, respectively.[1]

2.      On November 18, 2021, Non-Party Scopus US Invest 4, LLC, as lender, made a commercial loan secured by a first position mortgage the Debtor, as borrower, in the principal amount of $4,481,250.00.  Exh. B, State Forecl. Lit. Compl. at ¶ 15.  The purpose of the subject loan was to acquire the Property, a luxury house more fully described as follows:

### Legal Description

Lot 5, in Block 9, COCOPLUM SECTION ONE, according to the map or plat thereof, as recorded in Plat Book 99, Page 39, of the Public Record of Miami-Dade County, Florida.

### Property Address

7233 Los Pinos Boulevard, Coral Gables, FL 33143

---

[1]  For ease of reference and consistency purposes, Movant shall adopt for use herein the defined terms of Property, Loan Documents, etc. as used in the Complaint.

**Property Folio No.**

03-4132-021-1500

(hereinafter, the "Property").  *Id.*

3.      The loan was secured by a first position mortgage, and other security facilities, including personal guaranties, which were assigned to non-party SMGRA4, LLC on February 28, 2023.  *Id.*  On March 3, 2023, Non-Party SMGRA4, LLC, as successor lender, made a future advance loan under the initial loan documents to Debtor 7233 Los Pinos, as borrower, in the principal amount of $918,750.00, thereby increasing the loan to the total principal amount of $5,400,000.00 (the "Loan").  *Id.* at ¶ 16.

4.      Movant is the successor-in-interest to the previous lenders by virtue of the Assignment of Amended, Restated and Consolidated Mortgage and Security Agreement and Notice of Future Advance and Other Loan Document dated September 15, 2023.  *Id.* at ¶ 17 & Exh. O.  As such, Movant is the owner and holder of the Mortgage.  Counsel for Movant is in possession of the original promissory note.  *See* Exh. A, State Forecl. Lit. Dkt at DE 3.

5.      As of the date of the filing of the Complaint, Movant is owed $4,481,250, together accrued interest through the date of the filing of this motion, as well as subsequently funded advancements of $103,534.23 under the Loan Documents for unpaid *ad valorem* real estate taxes, and unliquidated attorneys' fees.  As of the date of this motion, Movant is owed $5,361,329.61, excluding attorneys' fees.     *See* Exh. A, State Forecl. Lit. Dkt at DE 2 & 42.

**(Debtor and Its Principals)**

6.      Debtor owns the Property.  Debtor, in turn, is owned by Non-Party Kapoor, LLC, a Florida limited liability company. *See* Fla. Div. Corp., Sec. State Corp. Details,  Exh. C and D. The principals of Kapoor, LLC are R. Kapoor and his spouse, Jennie Frank ("J. Frank") (together,

the "Kapoors").  *Id.*  R. Kapoor and J. Frank purport to own the membership interests in Kapoor,

LLC in Tenancy by Entirety.  *See* Exh. E. The Kapoors are guarantors of the Loan.  The Property

is non-homestead property.  *See* Business Purpose Aff., Exh. F.

### (Relevant Filings in the State Court Foreclosure Litigation)

7.    On January 10, 2024, Debtor, together with Kapoors, filed  *Defendants' Motion to
Stay Proceedings and For Extension of Time* ("Debtor's State Court Motion to Stay"), seeking to
stay the State Foreclosure Litigation on the grounds that the stay provisions in the SEC Litigation
Receivership Order (defined below) applied to the proceedings.  *See* Exh.  G.

8.    On February 12, 2024, Movant filed in the State Foreclosure Litigation *Plaintiff's
(1) Motion to Appoint Receiver; (2) to Permit Receiver to Eject Defendants Rishi K. Kapoor and
Jeannie E. Frank and Sequester Their Personal Belongings in Storage; and (3) Demand for
Evidentiary Hearing After Expedited Discovery* (the "State Court Receivership Motion").  *See*
Exh. H.   In this motion, Movant sought a receiver over the Property and the ejectment of the
Kapoors from the Property.  Also at this time, Movant likewise filed *Plaintiff's Motion for Order
to Show Cause* ("State Court Show Cause Motion") under § 702.10(1), Fla. Stat.[2] *See* Exh. I.

9.    On February 13, 2024, the state court conducted a case management conference,
setting a hearing on Debtor's State Court Motion to Stay for March 8, 2024.  Critical here, the trial
court indicated it was inclined to appoint Melanie Damian as receiver over the Property.  *See* Exh
J.  On March 8, 2024, the state court denied Debtor and the Kapoors' State Court Motion to Stay.
*See* Exh. K. The trial court adopted Movant and the Receiver's position concerning the scope of
the subject receivership and asset freeze orders.  *See* Exh. L.

---

[2] Section 702.10(1), Florida Statutes, provides a lienholder, such as Movant, for an expedited foreclosure remedy if a debtor cannot show cause as to why a foreclosure judgment should not be entered.

10.     On March 19, 2024, the state court noticed for hearing on April 9, 2024 both Movant's State Court Receivership Motion and State Court Order to Show Cause Motion.  On March 25, 2024, fifteen (15) days before the April 9, 2024 hearing, R. Kapoor caused Debtor to file for Chapter 11 bankruptcy.

11.     As discussed below, and critical here, R. Kapoor filed a motion to sell the Property and to stay the State Court Foreclosure Litigation ("R. Kapoor's SEC Motion to Sell and Stay") in the SEC Litigation on March 4, 2024.  See Exh. M.  On March 21, 2024 (a Thursday), the District Court conducted a status conference where the court indicated it would not be ruling on R. Kapoor's Motion to Sell and Stay for at least a month plus.  *See* Exh. N.  Debtor **conveniently** filed for bankruptcy on March, 2024 (a Monday), one business day after the status conference where R. Kapoor learned that his SEC Motion to Sell and Stay would not be heard until after Movant's State Receivership Motion and State Show Cause Motion.

**B.     The SEC Litigation, Receivership Order, Asset Freeze Order and Other Matters.**

**1.   The SEC Complaint.**

1.     On December 27, 2023, the SEC initiated the SEC Litigation against R. Kapoor alleging that he, together with his affiliated companies and their subsidiaries, willfully engaged in a fraudulent real estate investment scheme in violation of the anti-fraud provisions of the federal securities laws.  *See* Exh. P.  The SEC alleges that Kapoor's Fraudulent Scheme bilked $93,000,000 from 50 investors during the time period of January 2018 through March 2023.  *Id.* Relevant here, the SEC sued in the SEC Litigation R. Kapoor's affiliated entities which he utilized to effectuate his Fraudulent Scheme. These affiliated entities are referred to as the "Company Defendants" in the SEC's Complaint and through the SEC Litigation.

### 2. The Asset Freeze and Receivership Orders.

2.       In the SEC Litigation, the SEC moved on an emergency basis to freeze the assets of R. Kapoor and the Company Defendants. *See* Exh. Q (the "<u>SEC Asset Freeze Motion</u>"). The purpose of this motion was to ensure that a disgorgement award could be satisfied *and* to prevent further dissipation of investor funds. The District Court granted the SEC Asset Freeze Motion, entering its *Sealed Order* (DE 10) (the "<u>Asset Freeze Order</u>"). *See* Exh. R. In the Asset Freeze Order, the court overseeing the SEC Litigation made the finding that the SEC established a prima facie case against R. Kapoor and the Company Defendants. *Id.*

3.       Relevant here, the District Court entered the following asset freeze injunctions:

A.       *Kapoor* and his directors… are, *restrained from, directly or indirectly*, *transferring*, setting off, receiving, changing, selling, pledging, assigning, liquidating, *or otherwise disposing of, or withdrawing any* assets or property, including but not limited to, *cash, free credit balances*, fully paid of securities, crypto assets, and/or property pledged or hypothecated as collateral for loans, *or charging upon or drawing from any lines of credit owned by, controlled, or in the possession of Kapoor*; and;

B.       *Any financial or brokerage institution, or other person or entity holding any such funds* or other assets, *in the name of, for the benefit of, or under the control of Kapoor, directly or indirectly, held jointly or singly*, and wherever located…*shall hold and retain within its control and prohibit the withdrawal, removal, transfer, disposition*, pledge, encumbrance, assignment set off, sale, liquidation, dissipation, concealment, or other disposal of any such funds or other assets, including, but not limited to, the following presently known accounts…

*Id.* at p. 2.

4.       On January 12, 2024, the District Court in the SEC Litigation entered its *Order Granting Plaintiff Securities and Exchange Commission's Expedited Motion for Appointment of Receiver, Asset Freeze and Other Relief Against the Company Defendants* ("<u>Receivership Order</u>"). *See* Exh. S. In the Receivership Order, the District Court appointed Bernice C. Lee as the Receiver

for purposes of marshaling and preserving all assets of the Company Defendants/ Receivership Defendants defined as "Receivership Assets," as well as any assets that were fraudulently transferred by the Company Defendants, defined as "Recoverable Assets." *Id.*

5.      Relevant here, R. Kapoor, in his individual capacity, is not included as a "Receivership Defendant" under the Receivership Order.  Consequently, the Receiver does not exercise jurisdictional authority over R. Kapoor.  Nonetheless, and of particular relevance here, the Asset Freeze Order does in fact attach to assets individually held by R. Kapoor (e.g., membership interests, boats, furniture, jewelry, etc.).  It further attaches by extension to any net sale proceeds of R. Kapoor's individual assets when sold.

### 3.   R. Kapoor's Yacht Is Arrested and Foreclosure Proceedings Initiated.

6.      Relevant to this motion, in the SEC Litigation, R. Kapoor sought judicial clarification concerning the framework and protocol for the voluntary disposition of a personal asset, his yacht.  The yacht, like his membership interest in Kapoor, LLC which manages and owns Debtor, is subject to the Asset Freeze Order. The District Court's interpretation and clarification is binding on R. Kapoor's handling of his beneficial, membership interest in Debtor (a limited liability company).

7.      On October 20, 2023, Unibank for Savings, lender on the Kapoors' yacht, initiated maritime foreclosure proceedings in the United States District Court for the Southern District of Florida under the case styled:  *Unibank for Savings vs. M/Y Suneeta II, et al.*, Case No. 9:23-CV-81411-DMM ("Yacht Foreclosure Litigation").

8.      In an effort to stall the foreclosure of their yacht, R. Kapoor filed in the SEC Litigation, *Defendant, Rishi Kapoor's, Motion for Clarification*.  *See* Exh. T.  In the motion, R. Kapoor sought a declaration on whether the Yacht Foreclosure Litigation was stayed under the

Receivership Order; and, whether he could sell the Yacht and, if so, under what parameters, etc. *Id.*

9.    On February 26, 2024, the court in the SEC Litigation entered its Order on R. Kapoor's motion for clarification. *See* Exh. U; SEC Lit. at DE 90. The court held that the Yacht Foreclosure Litigation was ***not*** stayed because "… there is no reason to believe the boat was bought in Defendant's capacity as an officer or manager of the Receivership Defendants, and Defendant does not acknowledge that the vessel is Receivership Property." *Id.* In holding so, the District Court expressly held that the Asset Freeze Order "certainly appl[ies] to any voluntary disposition of such property by Defendant." *Id.* As such, the court adopted the Receiver's position, finding-

> "While the provisions of the Asset Freeze Order arguably might apply to a creditor's action against Defendant's property- and certainly apply to any voluntary disposition of such property by Defendant- **Defendant may sell the vessel at fair market value, provided that (1) the terms of sale are fully disclosed to the Receiver and approved in advance of sale; (2) no insider is participating in such sale; and (3) any net proceeds after satisfaction of the lender's indebtedness are turned over to the receivership estate.** The Court notes that failing such a sale by Defendant, Receiver does not expect to oppose a foreclosure sale by the lender, providing such a sale is appropriately notice and marketed and that any net proceeds are turned over the receivership estate."

*Id.* (Emphasis supplied).

## C.    Framing of the Dispute between the SEC Receiver and Debtor: Kapoors' Claim of Tenancy By Entirety for Net Sale Proceeds of Debtor's Property.

10.    In the months leading up to Debtor's filing, Debtor and Kapoors sought to sell the Property. Under the Asset Freeze Order, the Receiver is required to consent to the terms of the sale. Debtor and Kapoors insisted that the Property be listed for sale by R. Kapoor's spouse J. Frank, who would receive a commission. The Receiver objected to this proposed term as violative of the Asset Freeze Order, insisting the sale must be an "arm's length transaction." Debtor and

Kapoors also insisted that they be permitted to assert a tenancy by entirety interest in the net sale proceeds.   The Receiver likewise objected to this term as also violative of the Asset Freeze Order.

11.     R. Kapoor filed in the SEC Litigation *Defendant Rishi Kapoor's Motion to Stay Court Proceedings and Permit Sale of Asset Subject to Asset Freeze Order*.  *See* Exh. M.  In this motion, R. Kapoor acknowledges the application of the Asset Freeze Order but seeks from the district court a ruling in its favor on these disputed terms of the proposed sale.

12.     On March 21, 2024, the Court in the SEC Litigation conducted a status conference. At the status conference, the Court indicated a ruling on R. Kapoor's Motion to Permit Sale would not be forthcoming.  *See* Exh. N.

13.     In pre-filing conferral with the SEC Receiver and Movant, Debtor and R. Kapoor has agreed to abandon its position set forth in its Motion for to Permit Sale of Asset filed in the SEC Litigation.  *See* Exh. V.  However, in its proposed Agreed Order of Dismissal, seeks additional terms.  Movant does not consent to any order in these proceedings or an order that stays the State Foreclosure Litigation in excess of three (3) months, as well as other objectionable terms.

**D.     The Property and Debtor's Filings.**

14.     Movant acquired an appraisal that values the Property at $7,350,000.  *See*  Exh. W.

15.     The Debtor, through counsel, has acknowledged Receiver's claim through Location Ventures (a Receivership Defendant) to recoup funds fraudulently diverted by R. Kapoor into the Property (a personal asset).  *See* Exh. J.  Further, there exists independent, corroborative evidence of the foregoing.  *See* Exh. X.

16.     Debtor, in its filings, identify Movant, as wells as junior construction lienors as creditors.   The junior construction lienholders are:   AM Studio Design, LLC, ARRAS Air

Conditioning, and The Piso Project (collectively, "Junior Lienholders").  They collectively possess the principal sum of $ 141,080.55 in lien claims against the Property.

17.      Debtor conveniently failed to identify the SEC or the SEC Receiver as creditors. Moreover, the Debtor failed to identify the amounts of the junior creditors.   Movant provides the following summary of creditors' claims applied to Debtor and K. Kapoor's claims to Net Sale Proceeds from sale of the Property:

| No. | Creditor | Amount |
|---|---|---|
| 1. | Sale Price of Property | $7,350,000 |
| 2. | Less Broker's Commission (6%) | ($441,000.00) |
| 3. | Less Closing Costs (.5%) | ($36,750.00) |
| 4. | Less Movant's Secured Position (excluding fees and advance costs, e.g., taxes) | ($5,361,329.61) |
| 5. | Less Movant's Advance Costs of Payment of Taxes | ($103,534.23) |
| 6. | Less Movant's Attorneys' Fees and Court Costs | ($175,000.00) |
| 7. | Less Junior Lienors' Claims (excluding interest) | ($141,080.55) |
| 8. | Net Sale Proceeds | $1,091,305.61 |
| 9. | Less SEC Receiver (Asset Freeze Order) | $1,091,305.61 |
| 10. | Less SEC Claw back As "Recoverable Asset" for Location Venture Payments | T/B/D |
|  | Available Net Sale Proceeds Due to Debtor/ Kapoor | 0.00 |

## MOTION TO TAKE JUDICIAL NOTICE

18.     Pursuant to Fed. R. Evid. 201(c)(2), Movant request this Court take judicial notice of the State Foreclosure Litigation court records cited above and attached as Exhibits A-L, and the proceedings and state court records in the Foreclosure Litigation as Exhibits M-U.

19.     Fed. R. Evid. 201(b)(2) provides that the court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *Id.* Courts routinely take judicial notice of the records on file with the court, as well as the records of other courts both within and outside of the federal system. *See In re Chariots of Palm Beach, Inc.*, 17-19455-MAM, 2019 WL 4744900, at *2 (Bankr. S.D. Fla. Sept. 27, 2019); *In re Loe*, 07-12045-BKC-RBR, 2007 WL 997581, at *1 (Bankr. S.D. Fla. Mar. 29, 2007). All of the records and facts set forth above are appropriate for judicial notice, as they are not subject to reasonable dispute and constitute court records that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Accordingly, judicial notice is appropriate and warranted.

## MOTION TO DISMISS AS "BAD FAITH" FILING AND FOR CAUSE

**A.     Dismissal Under Section 1112(b) of the Bankruptcy Code as a "Bad Faith" Filing is Warranted.**

Movant, Los Pinos Acquisition, moves this Court to dismiss this bankruptcy case on the grounds that it constitutes a "bad faith" filing subject to dismissal under Section 1112(b) of the Bankruptcy Code. Movant, in the next section, likewise seeks attorneys' fees and sanctions in the form of a fine against Debtor and its principals for causing the bad filing.

**1.     The Legal Standard for Determining "Bad Faith."**

Section 1112(b) of the Bankruptcy Code provides that "…on request of a party in interest, and after notice and a hearing, the court shall … dismiss a case under this chapter … for cause …"

which includes bad faith.  11 U.S.C. § 1112(b)(1); *In re Outta Control Sportsfishing, Inc.*, 642 B.R. 180, 183 (Bankr. S.D. Fla. 2022) (citing, *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988).  "There is no particular test for determining whether a debtor has filed a petition in bad faith."  *Id.*  Instead, "the determination of cause under § 1112(b) is subject to judicial discretion under the circumstances of each case."  *In re Outta Control,* 642 B.R. at 183.  (citing, *in re Albany Partners, Ltd.*, 749 So.2d 670, 674 (11th Cir. 1984).  Determination of "good faith" should, thus, be made on a case-by-case basis after evaluating the "totality of the circumstances."  *Id.*  In determining bad faith, "courts may consider any factors which evidence 'an intent to abuse the judicial process and the purpose of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'"  *Id.*

In the often-cited case of *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988), the Eleventh Circuit Court of Appeals affirmed a bankruptcy court's dismissal of a Chapter 11 case on the finding of "bad faith."  *Id.* There, the bankruptcy court made the express finding that the filing of the Chapter 11 case was done to delay or frustrate the secured creditors' attempts to foreclose on debtor's sole asset.  *Id.*  In affirming the dismissal, the Appellate Court held that a bankruptcy court may consider "… any factors which evidence an intent to abuse the judicial process and the purpose of reorganization provisions, or in particular, factors which evidence that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *Id.* (internal quotations omitted).  Circumstantial factors identified by courts to evidence bad faith have routinely included the following:

- The debtor has only one asset;

- The debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

- The debtor has few employees;

- The debtor's financial problems involve essentially a dispute between the debtor and secured creditors which can be resolved in a pending state court action; and,

- The timing of a debtor's filing evidences an intend to delay or frustrate the legitimate efforts of the debtor's unsecured creditors to enforce their rights.

*Id.* at 1394-95. *See also*, *In re State St. Houses, Inc.*, 356 F.3d 1345 (11th Cir. 2004) (holding same); *In re Phoenix Land Corp.*, 164 B.R. 174, 176 (Bankr. S.D. Fla. 1993) (holding that, in ruling on motion to dismiss Chapter 11 case as bad faith filing, bankruptcy court may consider any factor that evidences a debtor's intent to abuse the judicial process, particularly where the facts evidence that voluntary petition was filed to delay or frustrate legitimate efforts of secured creditors to enforce their rights).

The case of *In re Wynwood Mercantile Corp.*, 81 B.R. 689 (Bankr. S.D. Fla. 1987) is virtually identical to the facts present here, that is, the filing of a Chapter 11 in order to frustrate a receiver appointed in a securities fraud case by a regulatory, governmental entity. There, the debtor Wynwood, through its principals, was sued by the State of Florida for violations of the State's anti-fraud provisions of the Florida securities laws. *Id.* at 690. A state court appointed a receiver over the debtor, as well as an asset freeze order over the debtor's assets. *Id.* The receiver moved to dismiss the Chapter 11 proceedings on the grounds of bad faith, namely, done to frustrate the State's receiver. The Bankruptcy Court agreed finding that intent of the filing was merely an attempt to frustrate state's regulatory efforts. The Court not only dismissed upon finding bad faith but fined the debtor's principal. *Id.* at 691. In doing so, the court characterized the debtor and its principal's frustrating conduct as "outrageous." *Id.* The court sanctioned the debtor's principal for causing the filing by imposing a personal fine. *Id.*

2.   **Debtor Seeks to Avoid and Leverage the SEC Receiver and Movant by Invoking the Automatic Stay Provisions of the Code when the District Court Indicated It Would Not Be Ruling on R. Kapoor's Motion for Sale Until Likely After a Receiver Was Appointed in the State Court Litigation.**

The totality of circumstances, particularly the timing of the filing surrounding Debtor's Chapter 11, lead to the inescapable conclusion that Debtor's sole intent in filing was to (i) frustrate the SEC Receiver's regulatory authority under the Asset Freeze Order and (ii) avoid the hearings in the State Foreclosure Litigation on Movant's State Court Receivership Motion and State Court Order to Show Cause Motion.

The Debtor and Kapoors needed the benefit of the automatic stay provisions of the Bankruptcy Code because the District Court overseeing the SEC Litigation was not adjudicating R. Kapoor's Motion to Sell and Stay *before* the state court in the State Foreclosure Litigation was to adjudicate Movant's motions (which could dispossess the Kapoors from the Property).  The District Court indicated this at a Thursday, March 21, 2024 case management conference. *See* N. R. Kapoor caused the Debtor to file its bankruptcy case two (2) business days later on Monday, March 25, 2024, which is seven (7) business days before his scheduled deposition on April 3, 2024, and eleven (11) business days before the already scheduled April 9, 2024 hearing on Movants State Court Receiver Motion and State Court Show Cause Motion.

This court need not labor beyond the undisputed fact that no new or pressing financial issues for the Debtor arose during the time-period after the District Court's case before R. Kapoor's depositions were to commence.  The only events were that of normal course motion practice in the pending lawsuits.  Thus, the only conclusion that can be drawn is that R. Kapoor caused Debtor to file its bankruptcy case in order to frustrate the SEC Receiver and avoid his deposition and looming hearings, along with the appointment of a receiver.

The Kapoors are living in the Property, not paying Debtor rent, not paying the subject mortgage, not contributing to expenses (including taxes) and, presumably, what funds they have access to are being used to fund R. Kapoor's civil and criminal defense.  This bankruptcy was thus designed for the dual purpose of leveraging the SEC to abandon in its positions claiming entitlement to the Net Sale Proceeds and objecting to J. Frank's involvement in the sale transactions.  Debtor's actions are the classic "bad faith" filing at the eleventh-hour to avoid looming, possessory hearing in state court in a two-party dispute. These Chapter 11 proceedings must be dismissed on "bad faith" grounds.

### 3. Debtor's Post Filing Agreement to Dismiss Upon a De Facto Reorganization Likewise Evidences a "Baid Faith" Filing Intent.

After the filing of these proceedings, Debtor discussed with Movant and SEC Receiver's counsel the propriety R. Kapoor's filing of these proceedings.  *See* Exh. V & Y.  Both Movant and SEC Receiver insisted on dismissal.  Movant indicated that it would be filing a motion for dismissal based upon bad faith grounds. After a series of further conferrals, Debtor agreed to dismiss the bankruptcy through an agreed order.  *Id.*  However, after days waiting for the Order, Debtor's counsel circulated a purported "agreed order" that contained the same terms that the SEC Receiver insisted upon but referenced an "agreement" by Movant to reorganization terms never discussed or agreed upon.  Indeed, Movant made clear that there were no conditions to Debtor's dismissal other than Movant would waive its claim for fees against Debtor based upon the dismissal.

Most notably, Debtor capitulated to the SEC Receiver's position on the Net Sale Proceeds and R. Kapoor's wife's involvement in any sale.  *See* Exh. V.  The SEC requires any agreed upon order concerning the sale of the Property to be submitted to the District Court overseeing the SEC Litigation.  *Id.*  Movant does not agree to any order other than a plain dismissal without additional

terms, let alone the proposed order by Debtor's counsel which grants lengthy extensions and requires Movant to advance funds.   The SEC Receiver consents to a generic dismissal order which simply dismisses these proceedings.

Relevant to the point in hand, Debtor's proposed order of dismissal in-and-of-itself is proposed in "bad faith."  It, in essence, constitutes a de facto plan of reorganization that would impact the rights of the junior lienors without providing those creditor's notice and rights provided in these proceedings.   Accordingly, Debtor's post filing conduct in agreeing to dismiss these proceedings immediately further evidence Debtor's initial and continuing "bad faith" intent.  This is particularly true given R. Kapoor never had an intent to sit for any interviews or a creditor's examination, given he has taken the Fifth Amendment in all such similar instances in the SEC Litigation.  For these reasons, a finding of "bad faith" and, thus, dismissal is warranted.

### 4.    The *Piccadilly* and Other Factors Establish Debtor's "Bad Faith."

In addition to the above, all *Piccadilly* factors applied to the circumstances of the Debtor's filing collectively paint-with bright colors- a portrait of Debtor's "bad faith."

*One*, the Debtor has no employees.  It is controlled by the manager R. Kapoor of its owner Kapoor, LLC that, in turn, is owned by R. Kapoor and J. Frank.  R. Kapoor is under an Asset Freeze Order based upon a prima facia showing that he engaged in a $93,000,000 securities fraud scheme. He and his spouse J. Frank are residing in the Property rent free, without paying the mortgage (or other expenses), and in contravention to an executed business purpose affidavit.  If the Debtor seriously wanted to reorganize, the Kapoors would vacate and rent the Property to cover expenses, including taxes and insurance.  This is especially true given R. Kapoor is subject to the Asset Freeze Order and has no identifiable source of income, let alone available income.  However,

R. Kapoor's true intent is to continue to live in luxury while he defends his criminal and civil cases, including fighting with the SEC Receiver.

*Two*, this dispute is basically a two-party dispute.  The only real creditors are Movant and the SEC Receiver.  The Junior Lienholders possess *de minimus*, secured claims.  The only real dispute blocking the Debtor's sale is a dispute between it and the SEC Receiver, <u>as Movant agreed to stay the foreclosure proceedings to permit a sale of the Property so long as the Debtor/ the Kapoors complied with the Asset Freeze Order and the stay was reasonable in duration</u>.

At the time of the filing of these proceedings, this dispute was the subject of a yet to be adjudicated motion still pending before the District Court in the SEC Litigation.  Post-filing, Debtor's last position- in conferral upon this motion- was that it agreed to dismissal and, in doing so, agreed to the SEC Receiver's positions on the Net Sale Proceeds and J. Frank's lack of involvement in any sale process.   Thus, this factor points to "bad faith" at the time of filing and the continuation of these proceedings.

*Three*, the timing of the filing of these Chapter 11 proceedings evidences a clear intent to frustrate the SEC and Movant.  The filing came two (2) business days after the District Court indicated it would not be adjudicating R. Kapoor's Motion to Sell and Stay until at least a month which, in the intervening time, R. Kapoor would have to give his deposition and the state court would adjudicate Movant's motions which sought to dispossess the Debtor and Kapoors from the Property.  This is the classic "bad faith" move to frustrate a creditor exercising its legitimate legal rights to security in state court litigation.

*Four*, the sole impediment to Debtor's sale of the Property outside of bankruptcy was R. Kapoor's insistence on terms which violated the Asset Freeze Order. This filing was intended to leverage the SEC Receiver into abandoning its position.  When confronted with Movant and the

SEC Receiver's position of bad faith filing, Debtor abandoned these requirements as part of a proposed dismissal order, a feat Debtor could have accomplished without the filing of these proceedings. This is particularly true given R. Kapoor's pending Motion for Sale and Stay in the District Court overseeing the SEC Litigation.

*Five*, the filing of these Chapter 11 proceedings was funded in violation of the Asset Freeze Order. Specifically, the Receiver, in her response (SEC Lit. at DE 115) to Defendant Rishi Kapoor's Motion to Direct Receiver to Advance Legal Fees and Costs (SEC Lit. at DE 107) discusses Debtor's filing of these proceedings. Therein, Receiver takes the position that, based upon Debtor's initial filings indicating the source of the funding of for the Chapter 11 filings, R. Kapoor violated the Asset Freeze Order. *Id.*

*Six*, Debtor's purported reorganization plan at the time of the filing of these proceedings violates the Asset Freeze Order. Debtor has no source of income. Its only potential source would be rental income, however, the Kapoors are residing in the Property rent free. Accordingly, and as stated by Debtor's counsel in conferral calls, the reorganization plan would be through liquidation of the Property. However, any sale without the Receiver's consent is a violation of the Asset Freeze Order. [insert cite]/ Likewise, any Net Sale Proceeds would be required to be relinquished to the Receivership Estate and not distributed. [insert cite]. Thus, such a reorganization plan would violate the Asset Freeze Order absent consent from the District Court which has not occurred and likely would never occur given the District Court's position on R. Kapoor's yacht. *See* Exh. T & U.

*Seven*, putting six aside, at the time of filing, it should have been abundantly clear to Debtor and Debtor's counsel of Debtor's inability to effectuate substantial consummation of a confirmed reorganization plan. This is particularly true based on Debtor's inability to maintain insurance or

borrower funds.  During conferral on this motion, Debtor's counsel requested Movant provide Debtor-in-Possession financing for payment of the insurance.  Movant declined.

*Eight,* Debtor and its principal R. Kapoor have engaged in blatant forum shopping.  The only benefit of these proceedings is the automatic stay provisions of the Bankruptcy Code.  The Debtor itself likely does not benefit because default interest continues to accrue.  The only true benefit is to R. Kapoor who has avoided giving his deposition in the state court proceedings, as well as the hearing on the previously mentioned motions of Movant.  Indeed, the hearing avoided by this filing likely would have led to the appointment of a receiver and the ejectment of the Kapoors from the Property.

Debtor and the Kapoors first attempted to avoid these hearings through a stay motion in the State Foreclosure Litigation.  After losing that motion, R. Kapoor sought a stay and sale in the District Court overseeing the SEC Litigation through R. Kapoor's SEC Motion to Sell and Stay. It was only when the District Court would not be adjudicating R. Kapoor's motion before the state court ruled upon Movant's Motion to Appoint Receiver and Motion for Order to Show Cause, that R. Kapoor caused Debtor to file these proceedings.  As of the date of this motion, Debtor's motion is still pending before the District Court in the SEC Litigation.  Thus, Debtor and R. Kapoor have engaged in forum shopping on precisely the same issues that are present in the other two previously filed forums.

*Nine*, Debtor's failure to identify the SEC and SEC Receiver as creditors in its filings likewise evidence "bad faith." And, Debtor's scheduling of Movant's debt as "disputed." It is inconceivable such omissions were accidental given the existence of the Asset Freeze Order and Receivership Orders.

Based on the foregoing factors, these proceedings should be dismissed on the grounds that Debtor's filing constitutes a "bad faith" filing under 11 U.S.C. § 1112(b).

**B.    Other Grounds Constitute "Cause" for Dismissal Under Section 1112(b)(4).**

**1.    Failure to Maintain Insurance.**

Section 1112(b)(4) permits a court to dismiss a petition for "cause." Relevant here, "cause" is defined to include the "failure to maintain appropriate insurance that poses a risk to the estate or to the public." § 112(b)(4)(C).  In pre-filing conferral, counsel for the Debtor acknowledged that the Debtor has no funds to pay for and maintain insurance for the Property. Thus, dismissal under § 1112(b)(4)(C) is warranted.

**2.    Failure to Obtain "Wet Ink" Signature.**

Section 1112(b)(4)(F) provides that "cause" for dismissal exists where based on a debtor's "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." *Id.*  "The Bankruptcy Rules, Local Rules, and case law collectively provide that an attorney may not sign a bankruptcy petition in lieu of an authorized representative of an entity debtor or on behalf of an individual debtor." *In re Hazelton Trust*, 646 B.R. 855, 861 (Bankr. S.D. Fla. 2022).  The attorney must first obtain and maintain a copy of the debtor's signature as proof of intent to seek bankruptcy relief. *Id.* (citing, Bankruptcy Rules 1008 and 9011; Local Rule 9011-1; and, *In re Whitehill,* 514 B.R. 687, 691 (Bankr. M.D. Fla. 2014)).

Here, Debtor's purported signature is a computer, digital signature.  During the pre-filing conferral, Debtor's counsel confirmed that he did not obtain R. Kapoor's "wet signature." Moreover, Movant's counsel infers from the pre-filing conferral that the digital signature purporting to be of R. Kapoor was affixed by Debtor's counsel.  In subsequent conferrals prior to

the filing of the motion, Debtor's counsel acknowledged that a "wet ink" signature was not created or obtained, however, one would be forth coming.  Given no such signature was obtained at the time of initiation, dismissal for cause is warranted on this ground.

> **3.** **Inability to Reorganize.**

Section 1112(b)(4)(M) permits a court to dismiss a chapter 11 petition based upon a debtor's "inability to effectuate substantial consummation of a confirmed plan."  Here, Debtor has zero potential income to effectuate a reorganization.  Nor can Debtor effectuate a reorganization through the potential sale of the Property, as the Receiver in the SEC Litigation must approve the sale and all Net Sale Proceeds are to be transferred to the Receiver for purposes of a future "disgorgement" judgment.  The only additional income that conceivably could be generated would be rental income. However, to generate such income would require either the Kapoors to pay rent or vacate the Property and lease to paying renters, neither of which they are willing to do.  Accordingly, there exists no scenario by which Debtor retains any sale proceeds to distribute and, thus, ceases to exist as a post chapter 11 going concern.

**C.**   **Lack of "Authority" to Initiate Bankruptcy Case.**

As identified *supra*, the Receiver believes  that R. Kapoor's initiation of these bankruptcy proceedings violates the Asset Freeze Order.  Specifically-

> Then, just five days after filing the Indemnification Motion, Mr. Kapoor caused 7233 Los Pinos, LLC to hire bankruptcy counsel and file a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Florida…The initial filings indicate that bankruptcy counsel received a $10,000 retainer, and that the $1,738 filing fee would be paid separately and could be charged to Mr. Kapoor's personal credit card (which would be a violation of the Asset Freeze Order).

(Emphasis Supplied).  Accordingly, if correct, then dismissal is appropriate.

## MOTION FOR ATTORNEYS' FEES, SANCTIONS
## AND ORDER BARRING FUTURE FILINGS

Movant, Los Pinos Acquisition, pursuant to this Court's inherent powers requests this Court grant Movant its attorneys' fees incurred in connection with the necessity of bringing this motion with remand to the state court overseeing the State Foreclosure Litigation to determine amount. Movant further requests this Court sanction Debtor's principals Kapoor, LLC, and R. Kapoor for causing the filing of Debtor's bankruptcy case in bad faith. Lastly, Movant requests this Court bar Debtor from filing bankruptcy for one (1) year.

A bankruptcy court's power to control the conduct of parties before it, including the determination that a party should be sanctioned for contemptuous conduct, is based both in statute allowing bankruptcy courts to enter orders necessary or appropriate to carry out provisions of the Bankruptcy Code and in the inherent power of the federal courts. *In re Kozich*, 406 B.R. 949 (Bankr. S.D. Fla. 2009); 11 U.S.C. § 105(a). Sanctions under the court's inherent powers can be assessed when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, has delayed or disrupted litigation, or has taken actions in the litigation for an improper purpose. *In re Little Rest Twelve, Inc.*, 11-31773-AJC, 2015 WL 1318912, at *2 (Bankr. S.D. Fla. Mar. 16, 2015). A federal court's inherent authority to sanction includes pre-filing restrictions such as enjoining future filings without leave of court and the imposition of monetary sanctions. *Id.*; *In re Soler*, 22-10746-RAM, 2022 WL 1077991, at *2 (Bankr. S.D. Fla. Apr. 8, 2022). Moreover, a bankruptcy court has the ability to sanction through a fine a Debtor's principal for filing a "bad faith" bankruptcy. *In re Wynwood Mercantile Corp.*, 81 B.R. at 689.

Should this Court find that the Debtor has indeed acted in bad faith, the Movant urges the Court to not only award reasonable attorneys' fees but also consider remanding related matters to the state court overseeing the State Foreclosure Litigation. Further, Movant seeks a fine against

4885-0379-3330, v. 2

the Debtor's principals,  Kapoor, LLC and R. Kapoor, the appropriateness of which should be determined by this Court.  Movant respectfully requests said fine be a forfeit to any claim of R. Kapoor's to the Net Sales Proceeds equal to fifty percent (50%) of the funds.  Such a fine should inure to the benefit of the SEC Receiver and Receivership Estate.  By limiting the forfeiture fine to (50%), this Court would be preserving J. Frank's claim to half of the funds.

## MOTION FOR ABSTENTION

Section 1334(c)(1) of the Bankruptcy Code provides that a bankruptcy court may "… in the interest of justice, or in the interest of comity with State courts or respect for State law, [abstain]… from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  *Id.* Section 1334(c) summarizes and incorporates federal non-bankruptcy abstention principles.  *See In re Dolen*, 265 B.R. 471, 476 (Bankr. M.D. Fla. 2001) (citing *Slater v. Twon of Albion,* 217 B.R. 394, 411 (W.D.N.Y.197).  In deciding whether to abstain from hearing a matter, a bankruptcy court must inquire whether there are exceptional circumstances that justify the bankruptcy court's surrender of its jurisdiction.  *Id.*

Here, there exists two exceptional circumstances.  First, there is sufficient equity in the Property for creditors to be paid in full and the remainder to be realized by the Debtor (or the SEC Receiver in-stead of the Debtor by virtue of the Asset Freeze Order).  However, this equity is eroding as long as the dispute between the SEC Receiver and R. Kapoor continues.  Abstention is warranted because the state court in the State Foreclosure Litigation is poised to enter an Order to Show Cause on Movant's State Court Motion for Order to Show Cause thereby hastening the case to final judgment for foreclosure and bring the Property to a foreclosure sale thereby realizing available foreclosure proceeds.   These proceeds are and will continue to erode thereby minimizing the potential source of funds available to R. Kapoor's fraud victims through disgorgement.

Second, all of R. Kapoor's positions (which apparently have been abandoned) are before the District Court in the SEC Litigation for consideration by way of R. Kapoor's Motion to Sell and Stay. The District Court previously decided the issue framed by the Motion to Permit Sale when it considered R. Kapoor's Motion for Clarification concerning the Kapoors' yacht. [cite]. Moreover, the District Court has already expended significant judicial resources- and will continue to do so- in granting and interpreting the Asset Freeze Order and Receivership Order, as wells as dealing with the parameters of both in the context of unwinding R. Kapoor's $93,000,000 securities fraud scheme. Given the only real issue present in these proceedings is the entitlement to the Net Sale Proceeds, and that issue is a dispute between the SEC Receiver and Debtor/ the Kapoors which is before the District Court, there is nothing else for this Court to oversee or administer. The remaining creditors are all secured creditors. Such factors serve judicial economy and, thus, warrant abstention.

## MOTION FOR RELIEF FROM AUTOMATIC STAY

In the alternative, if this Court finds that dismissal of the Debtor's petition is not appropriate, Movant requests entry of an order modifying the automatic stay pursuant to section 362(d)(2) of the Bankruptcy Code so it may conclude the State Foreclosure Litigation. *See* § 362(d)(2) (providing that a court shall grant relief from stay of an act against property if "…(A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization…" ).

As explained *supra*, there is no available equity for the Debtor to reorganize. Any equity realized in Net Sale Proceeds is subject to the SEC Receiver's claims under the Asset Freeze Order and Receivership Order (through claw back of fraudulently diverted funds from a Receivership Defendant into the Property). Accordingly, Movant requests stay relief for this reason.

## PRAYER FOR RELIEF

WHEREFORE, Movant requests this Cour enter an order:  (1) dismissing Debtor's bankruptcy case as a "bad faith" filing and for other grounds constituting "cause" for dismissal under § 1112(b)(4) of the Bankruptcy Code; (2) awarding Movant its attorneys' fees against Debtor and its principals Kapoor, LLC and Rishi Kapoor; (3) sanctioning Debtor and its principals Kapoor, LLC and Rishi Kapoor for attempting to frustrate the regulatory efforts of the Securities and Exchange Commission and a federal court appointed receiver charged with enforcing an asset freeze order against Debtor's principal Rishi Kapoor; (4) alternatively, motion to abstain from exercising jurisdiction over this case; (5) alternatively, granting Movant stay relief to continue state court foreclosure proceedings; and, (6) motion to take judicial notice of certain federal and state court proceedings.  Movant further requests any further relief this Court deems just and proper.

DATED:  April 16, 2024.

> */s/ Jason R. Alderman, Esq.*
> Florida Bar No. 0172375
> Jason R. Alderman
> The Alderman Law Firm
> 9999 NE 2nd Ave, Suite 211
> Miami Shores, Fl 33138
> jalderman@thealdermanlawfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on April, 16 2024, the CM/ECF system, which sent notification and was electronically served upon all parties in interest participating in the CM/ECF system.

> By: */s/ Jason R. Alderman*
> Jason R. Alderman