**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Case No. 24-12797-RAM |
| 7233 LOS PINOS, LLC, | Chapter 11 (Sub V) |
| Debtor. _____/ | |

**DEBTOR'S AMENDED APPLICATION FOR EMPLOYMENT OF BUSCHETTI REALTY GROUP AS EXCLUSIVE REAL ESTATE BROKER[1]**

7233 Los Pinos, LLC, as the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "*Debtor*"), hereby submits this amended application (this "*Application*"), pursuant sections 105(a) and 327 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "*Bankruptcy Code*"), Rule 9013 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "*Local Rules*") for entry of an order authorizing, but not directing, the Debtor to: (i) employ Buschetti Realty Group; and (ii) enter into certain related Listing Agreement. In support of this Application, the Debtor respectfully states as follows:

1. On March 25, 2024 (the "*Petition Date*"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "*Chapter 11 Case*"). The Debtor is authorized to continue operating its affairs as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. No examiner or statutory committee has been appointed.

---

[1] Amended to propose Buschetti Realty Group as the sole real estate broker and reflect other changes as requested by the Office of the United States Trustee.

1

3. The Debtor is a real estate holding company with a residential property located 7233 Los Pinos Blvd., Coral Gables, Florida (the "Property") being its primary asset. The Debtor is 100% owned by Kapoor, LLC, a Florida limited liability company.

4. Additional factual background relating to the Debtor's commencement of the Chapter 11 Case is set forth in detail in the *Debtor's Response to Motion to Dismiss [ECF No. 24]* (the "Response") [ECF No. 53], which is incorporated herein by reference.

5. The Debtor believes that the Property can be sold expeditiously in these proceedings for the benefit of its creditors and relevant stakeholders. Accordingly, the Debtor has requested the real estate services of Buschetti Realty Group (the "*Broker*") to solicit offers and list and market the Property for a potential sale.

6. Subject to approval of the Court, the Debtor intends to enter into exclusive right of sale listing agreement (the "*Listing Agreement*"), which is attached hereto as composite **Exhibit A**. Pursuant to the Listing Agreement, the Broker is to receive a four and one-half percent (4.5%) commission, of which up to two and one quarter percent (2.25%) may go toward compensating the buyer's broker (the "*Procuring Cause Broker*").

7. It should be noted that the listing agreement is voidable by either party with thirty (30) days' notice and the Broker will only receive compensation if the property is sold pursuant to a Court Order.

8. The proposed Broker is disinterested within the meaning of 11 U.S.C. §101(14) and §327(a). Attached hereto as **Exhibit B**, is the Affidavit of the Broker.

9. The Broker agrees to market the Property for sale as an arm's length transaction to independent third parties.

10. The Debtor believes that the retention of the Broker is in the best interest of the estate, as the terms upon which he has agreed to handle this sale are the terms which are common throughout this district. The Debtor believes that the Broker has the requisite expertise and experience and would be the best prospective party for handling the listing and marketing of the Property.

11. The Debtor requests that this Court approve the Listing Agreement and the employment of Buschetti Realty Group, as the approved Broker for the Estate. Further, the Debtor requests that this Court approve the compensation to the Broker of up to four and one-half percent (4.5%), which may be divided with a Procuring Cause Broker, as set forth herein and in the Listing Agreement.

12. Upon the entry of an Order Approving a Sale of the Property by the Debtor, the Debtor requests authorization to disburse payment of the Broker's commission, and/or payment to any Procuring Cause Broker, pursuant to the Listing Agreement, without the necessity of further notice or hearing.

WHEREFORE, the Debtor respectfully requests the entry of an Order: (i) granting this Application; (ii) approving the Listing Agreement attached hereto as composite Exhibit A; (iii) approving the employment of the Debtor's proposed Broker upon the terms and conditions stated herein; (iv) approving the Broker's proposed commission and authorizing the Debtor to disburse payment to the Broker and/or to any Procuring Cause Broker, pursuant to the Listing Agreement; and (v) for any such other and further relief as the Court deems just and proper.

Respectfully submitted this 9th day of May 2024.

>DGIM Law, PLLC
>*Counsel for the Debtor*
>2875 NE 191st Street, Suite 705
>Aventura, FL 33180
>Phone: (305) 763-8708
>
>By: */s/ **Monique D. Hayes***
> Monique D. Hayes, Esq.
> Florida Bar No. 0843571
> E-mail: monique@dgimlaw.com
> Isaac Marcushamer, Esq.
> Florida Bar No. 0060373
> E-Mail: isaac@dgimlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the forgoing Application was filed and served via CM/ECF notification to all parties registered to receive electronic notice on this 9th day of May 2024.

>*/s/ **Monique D. Hayes***
>Monique D. Hayes, Esq.

4

# **EXHIBIT A**

## Exclusive Right of Sale Listing Agreement

1. This Exclusive Right of Sale Listing Agreement ("Agreement") is between
2\* _____7233 LOS PINOS, LLC_____ ("**Seller**")
3\* and _____BOSCHETTI REALTY GROUP_____ ("**Broker**").

4. **1. Authority to Sell Property:** **Seller** gives **Broker** the EXCLUSIVE RIGHT TO SELL the real and personal
5.  property (collectively "Property") described below, at the price and terms described below, beginning
6\* _____May 7, 2024_____ and terminating at 11:59 p.m. on _____May 7, 2025_____ ("Termination Date"). Upon
7.  full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8.  automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge
9.  that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10. color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11. law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12. **2. Description of Property:**
13\* (a) **Street Address:** 7233 LOS PINOS BLVD, CORAL GABLES, FL 33143
14. 
15\* Legal Description: COCOPLUM SEC 1 PB 99-39 LOT 5 BLK 9 LOT SIZE 17641 SQ FT
16\* ☐ See Attachment
17\* (b) **Personal Property, including appliances:** _____
18\* ☐ See Attachment
19. (c) **Occupancy:**
20\* Property ☐ is ☒ is not currently occupied by a tenant. If occupied, the lease term expires _____.

21. **3. Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller**:
22\* (a) **Price:** $8,495,000.00
23\* (b) **Financing Terms:** ☒ Cash ☒ Conventional ☐ VA ☐ FHA ☐ Other (specify) _____
24\* ☐ **Seller** Financing: **Seller** will hold a purchase money mortgage in the amount of $_____
25\* with the following terms: _____
26\* ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $_____ plus
27\* an assumption fee of $_____. The mortgage is for a term of _____ years beginning in
28\* _____, at an interest rate of _____ % ☐ fixed ☐ variable (describe) _____.
29\* Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notices to Seller:** (1) You may
30. remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
31. lender to determine the extent of your liability. **Seller** will ensure that all mortgage payments and required
32. escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
33. (2) Extensive regulations affect **Seller** financed transactions. It is beyond the scope of a real estate licensee's
34. authority to determine whether the terms of your **Seller** financing agreement comply with all applicable laws
35. or whether you must be registered and/or licensed as a loan originator before offering **Seller** financing. You
36. are advised to consult with a legal or mortgage professional to make this determination.
37\* (c) **Seller Expenses:** **Seller** will pay mortgage discount or other closing costs not to exceed _____% of the
38. purchase price and any other expenses **Seller** agrees to pay in connection with a transaction.

39. **4. Broker Obligations:** **Broker** agrees to make diligent and continued efforts to sell the Property in accordance with
40. this Agreement until a sales contract is pending on the Property.

41. **5. Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller**
42. because the Property will be exposed to a large number of potential buyers. As a MLS participant, **Broker** is
43. obligated to enter the Property into the MLS within one (1) business day of marketing the Property to the public
44. (see Paragraph 6(a)) or as necessary to comply with local MLS rule(s). This listing will be published accordingly in
45. the MLS unless **Seller** directs **Broker** otherwise in writing. (See paragraph 6(b)(i)). **Seller** authorizes **Broker** to
46. report to the MLS this listing information and price, terms, and financing information on any resulting sale for use
47. by authorized Board / Association members and MLS participants and subscribers unless **Seller** directs **Broker**
48. otherwise in writing.

Seller (_____) (_____) and Broker/Sales Associate (__MB__) (_____) acknowledge receipt of a copy of this page, which is Page 1 of 4.
ERS-17sa    Rev 5/2020                                                                    ©2020 Florida Realtors®
Serial#: 019217-300171-5099272

Form Simplicity

6. **Broker Authority: Seller** authorizes **Broker** to:
   (a) Market the Property to the Public (unless limited in Paragraph 6(b)(i) below):
      (i) Public marketing includes, but is not limited to, flyers, yard signs, digital marketing on public facing websites, brokerage website displays (i.e. IDX or VOW), email blasts, multi-brokerage listing sharing networks and applications available to the general public.
      **(ii) Public marketing also includes marketing the Property to real estate agents outside Broker's office.**
      (iii) Place appropriate transaction signs on the Property, except if Paragraph 6(b)(i) is checked below.
      (iv) Use **Seller's** name in connection with marketing or advertising the Property.
      ☐ Display the Property on the Internet except the street address.
   (b) Not Publicly Market to the Public/Seller Opt-Out:
      (i) ☐ **Seller** does not authorize **Broker** to display the Property on the MLS.
      (ii) **Seller** understands and acknowledges that if **Seller** checks option 6(b)(i), a For Sale sign will not be placed upon the Property and
      (iii) **Seller** understands and acknowledges that if **Seller** checks option 6(b)(i), **Broker** will be limited to marketing the Property only to agents within **Broker's** office.
      _____/_____ **Initials of Seller**
   (c) Obtain information relating to the present mortgage(s) on the Property.
   (d) Provide objective comparative market analysis information to potential buyers.
   (e) (**Check if applicable**) ☐ Use a lock box system to show and access the Property. A lock box does not ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor Board / Association from all liability and responsibility in connection with any damage or loss that occurs.
      ☐ Withhold verbal offers.  ☐ Withhold all offers once **Seller** accepts a sales contract for the Property.
   (f) Act as a single agent of **Seller**.
   (g) **Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or reviews and comments about a property may be displayed in conjunction with a property on some VOWs. Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or comments and reviews about this Property.
      ☐ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such estimate) to be displayed in immediate conjunction with the listing of this Property.
      ☐ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

7. **Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:
   (a) Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
   (b) Recognize **Broker** may be subject to additional MLS obligations and potential penalties for failure to comply with them.
   (c) Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during reasonable times.
   (d) Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.
   (e) Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature, including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's** negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; (3) the existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This clause will survive **Broker's** performance and the transfer of title.
   (f) Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).
   (g) Make all legally required disclosures, including all facts that materially affect the Property's value and are not readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such material facts (local government building code violations, unobservable defects, etc.) other than the following: _____
   **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.
   (h) Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting requirements, and other specialized advice.

8. **Compensation:** **Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing, and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to **Seller**. **Seller** will pay **Broker** as follows (plus applicable sales tax):

   (a) ____4.5__% of the total purchase price plus $_____ OR $_____, no later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's** fee being earned.

   (b) _____ ($ or %) of the consideration paid for an option, at the time an option is created. If the option is exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this subparagraph.

   (c) _____ ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a contract granting an exclusive right to lease the Property.

   (d) **Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether the buyer is secured by **Seller**, **Broker**, or any other person. (2) If **Seller** refuses or fails to sign an offer at the price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to cancel an executed sales contract. (3) If, within _____ days after Termination Date ("Protection Period"), **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom **Seller**, **Broker**, or any real estate licensee communicated regarding the Property before Termination Date. However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another broker.

   (e) **Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive __NONE__% (50% if left blank) of all deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to exceed the Paragraph 8(a) fee.

9. **Cooperation with and Compensation to Other Brokers: Notice to Seller:** The buyer's broker, even if compensated by **Seller** or **Broker**, may represent the interests of the buyer. **Broker's** office policy is to cooperate with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of ☒ ____2.25__% of the purchase price or $_____ to a single agent for the buyer; ☒ ____2.25__% of the purchase price or $_____ to a transaction broker for the buyer; and ☐ _____% of the purchase price or $_____ to a broker who has no brokerage relationship with the buyer. ☐ None of the above. (If this is checked, the Property cannot be placed in the MLS.)

10. **Brokerage Relationship:**

**SINGLE AGENT NOTICE**

**FLORIDA LAW REQUIRES THAT REAL ESTATE LICENSEES OPERATING AS SINGLE AGENTS DISCLOSE TO BUYERS AND SELLERS THEIR DUTIES.**

As a single agent, _____BOSCHETTI REALTY GROUP_____ and its associates owe to you the following duties:

1. Dealing honestly and fairly;
2. Loyalty;
3. Confidentiality;
4. Obedience;
5. Full Disclosure;
6. Accounting for all funds;
7. Skill, care, and diligence in the transaction;
8. Presenting all offers and counteroffers in a timely manner, unless a party has previously directed the licensee otherwise in writing; and
9. Disclosing all known facts that materially affect the value of residential real property and are not readily observable.

_____[signature]_____    05/07/2024
Signature                                 Date

_____    _____
Signature                                 Date

Seller (____) (____) and Broker/Sales Associate (__MB__) (____) acknowledge receipt of a copy of this page, which is Page 3 of 4.
ERS-17sa    Rev 5/2020                                               ©2020 Florida Realtors®
Serial#: 019217-300171-5099272

Form Simplicity

11. **Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct expenses incurred in marketing the Property, and pay a cancellation fee of $_____ plus applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph 8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property during the time period from the date of conditional termination to Termination Date and Protection Period, if applicable.

12. **Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be settled by first attempting mediation under the rules of the American Arbitration Association or other mediator agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows: **Arbitration:** By initialing in the space provided, **Seller** (____) (____), Sales Associate (____), and **Broker** (____) agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will equally split the arbitrator's fees and administrative fees of arbitration.

13. **Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives, administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals. The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories of potential or actual transferees.

14. **Additional Terms:** - All matters regarding the sale (not necessarily the distribution of proceeds to equity) will be resolved exclusively by the Bankruptcy Court.
    - The listing agreement shall be governed by Florida law.
    - No broker, including BRG, shall have any interest in any deposit from any buyer in the case of default.
    - Compensation shall be paid only as approved by the Court.

**Seller's Signature:** _____ Date: _____
Home Telephone: _____ Work Telephone: _____ Facsimile: _____
Address: _____
Email Address: _____

**Seller's Signature:** _____ Date: _____
Home Telephone: _____ Work Telephone: _____ Facsimile: _____
Address: _____
Email Address: _____

**Authorized Sales Associate or Broker:** [signature] Date: 05/07/2024
Brokerage Firm Name: BOSCHETTI REALTY GROUP   Telephone: 3057908729
Address: 5701 Sunset Dr, Suite #128, South Miami, FL 33143

Copy returned to **Seller** on _____ by ☐ email ☐ facsimile ☐ mail ☐ personal delivery.

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller (_____) (_____) and Broker/Sales Associate (__MB__) (_____) acknowledge receipt of a copy of this page, which is Page 4 of 4.
ERS-17sa    Rev 5/2020                                                                                      ©2020 Florida Realtors®
Serial#: 019217-300171-5099272

Form Simplicity

# **EXHIBIT B**

dotloop signature verification: dtlp.us/OH4P-dt1t-wcOX

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:                                                                                  Case No. 24-12797-RAM

7233 LOS PINOS, LLC,                                               Chapter 11 (Sub V)

    Debtor.
_____/

**DECLARATION OF MAURICE BOSCHETTI IN SUPPORT OF THE
AMENDED APPLICATION FOR EMPLOYMENT AND RETENTION OF
<u>BOSCHETTI REALTY GROUP AS REALTOR</u>**

I Maurice Boschetti, declare based on my personal knowledge the following to be true under penalty of perjury:

1. I am the owner of Boschetti Realty Group ("BRG") and I am the lead broker responsible for this engagement.

2. I submit this declaration in support of the Debtor's Application to Retain BRG to market and sell 7233 Los Pinos Blvd in Coral Gables, Florida (the "Property").

3. BRG and I have extensive expertise in selling real estate in the Coral Gables Market. BRG sold the property to the current owner on November 18, 2021. BRG has listed and sold multiple properties in the Coral Gables market. This is in addition to many luxury home sales in the broader South Florida Market.

4. BRG has not received any retainer for its proposed representation.

5. BRG has agreed that any compensation would be subject to Bankruptcy Court Approval. Moreover, BRG has agreed that the commission would be capped at 4.5%, inclusive of a $2.25% co-broker fee if needed.

6. Other than as follows BRG has no connection to any party in the case or the Debtor and is otherwise disinterested:

   a. Jennie Kapoor previously worked for BRG for less than 60 days and then, to my knowledge, joined another brokerage firm to potentially co-list on this Property.

   b. BRG is not co-listing with any brokerage and Jennie Kapoor is not affiliated with BRG in any manner whatsoever.

   c. Jennie Kapoor will not receive any compensation in the form of brokerage fees from the sale of the Property or any other payment from BRG relating to the sale of the Property.

   d. BRG was the broker involved in the sale of the Property to 7233 Los Pinos, LLC on November 18, 2021.

   e. On December 8, 2021, BRG was the broker involved in the sale of the property located at 2618 Trapp Avenue, Unit A, Miami, Florida, 33133, which was owned by an entity managed by Rishi Kapoor.

   f. To the best of my knowledge neither I nor anyone at BRG has any interest that is materially adverse to the interest of the estate or to any class of creditor.

   g. To the best of my knowledge, neither I nor anyone at BRG has been a director, officer or employee of the Debtor.

I declare under penalty of perjury under the laws of the United States that foregoing is true and correct to the best of my knowledge and belief.

Dated May 8th, 2024,

*Maurice Boschetti*

dotloop verified
05/08/24 5:01 PM EDT
JKII-OQDZ-1EKV-FFWP

*Broker and founder, Boschetti Realty Group*
Maurice Boschetti
88 SW 7th St, Apt 1805
Miami, FL, 33130
(305)-790-8729

2

# EXHIBIT "B"

**Broker Opinion of Value and Comparative Market Analysis**

Date: 03.19.24

Prepared by:
Jennie Frank Kapoor
Licensed Florida Real Estate Associate
Boschetti Realty Group

To Whom It May Concern:

Below please find an opinion of value based on a comparative market analysis prepared by myself and reviewed by my broker.

**I. Subject Property**
7233 Los Pinos Blvd
Coral Gables, FL 33143

**II. Key Property Attributes**
- Asking Price: $8,495,000
- $ / SF: $1,399
- Year Built: 1983 and Renovated 2015 & 2024
- Bed & Bath: 5 / 6.5
- AC SF (Adjusted): 6,069
- Lot Size SF: 17,424.00 (0.40 of one acre)

**III. Summary**
Based on the following data, analysis and market expertise, we believe the subject property shall trade between a range of **$7.833M – $8.284M.**

This range was determined by the following analysis of imputed valuations from the Comparative Market Analysis (CMA) of Cocoplum neighborhood homes i) for sale; ii) under contract, and iii) sold (see "CMA Exhibit A"). There are a meaningful amount of relevant comps within the Subject Property's neighborhood, with transactions inside the last two years, that analysis outside the neighborhood was unnecessary for prospective valuation purposes.

1)  The most relevant sold comparable, 113 Gavilan Ave, suggests an imputed valuation of the Subject Property of:
    a.  $8,025,403.

1

2) The price based on the average $ / SF of the most relevant sold comps imputes a valuation of:
   a. $7,833,898.
3) And, the price based on the average $ / SF of the most relevant active comps applied with a generously conservative 90% list to sales price ratio imputes a valuation of:
   a. $8,284,452.

Therefore, we believe a **list price of $8,495,000** balances a realistic sales price with a signal to the market of an intent to sell.

## IV. Analysis

Below please find discussion analyzing the most relevant comparables to the Subject Property. Each of the homes selected in the analysis represent a comparable, slightly better, or significantly inferior condition to that of the Subject Property. Select "new construction" or "fully renovated" homes are also included for context of valuations that would be superior to that of the Subject Property. Taken together, the confluence of analysis provided below and within the attached CMA is designed to help create a valuation range by creating a realistic valuation floor and ceiling for the Subject Property. Of course, homes in Cocoplum are not commodities, and each one carries its own unique characteristics that will yield incrementally higher or lower pricing in relation to its comp set – along with the impact of market conditions.

*Sold*

The most relevant comparable is 113 Gavilan Ave, which sold nearly a year ago (3/31/23) in inferior market conditions for $1,322 / SF. The home is updated and on a smaller lot, and arguably contains a similar renovation level as the Subject Property on the similar waterfront conditions.

7220 Los Pinos Blvd is directly across the street from the Subject Property and is fully renovated, however, it is on a dry lot site. Adjusting in its favor for its level of renovation, yet, against for its lack of bay / ocean access likely results in a price of $1,300 / SF that could reasonably be imputed for the Subject Property on the balance of attributes.

168 Paloma Drive is of smaller home size, with a comparable lot size, on the water with bay / ocean access, yet is of considerably dated condition. However, it yielded a price of $1,296 / SF, which strongly supports a floor for the imputed valuation of the Subject Property.

*Pending / Under Contract*

7300 Los Pinos Blvd represents a fully renovated, but dry lot home, of slightly smaller size diagonally across the street from the Subject Property. While anticipated to close by the end of March, the property is believed to be under contract for approximately $7.1M. Adjusting in its

2

favor as fully renovated, but to its detriment for not having access to the bay / ocean, we believe this represents a strong floor for the pricing of the Subject Property at $1,284 / SF.

152 Paloma Dr is included for purposes of demonstrating the trading price of a fully renovated, waterfront comparable, with a contract price believed to be approximately $11.2M ($1,949 / SF) on a smaller lot.

7111 Los Pinos Blvd is included as it represents the pricing for a shell of a home contemplated for a full "gut job" renovation on a dry lot site ($966 / SF). This is included for context only and not suggestive of direct valuation of the Subject Property.

*Actives (Relevant Renovations)*
When considering each of the attached active comparables in this category, we have isolated those properties of relevant renovation or pre-renovation condition to the Subject Property. The CMA Exhibit notes and links speak for themselves, and we believe we are pricing the Subject Property at a value compared to these properties.

As a whole, these properties average an asking price of $1,517 / SF. If one were to assess a 10% discount of Listing to anticipated Sales price (suggesting a ratio of 90%) – which is generally considered conservative, as Realtors push for the highest ratio possible when attempting to accurately price and sell homes – this would yield an average expected price of $1,365 / SF.

Such a price target would be reasonable to impute to the Subject Property above the average pricing of the sold comparables for the following reasons: i) improving macro-economic conditions for interest rates on loan financing compared to 2022 and 2023; ii) the incredible appreciation in equity and bond markets over the last year raising the purchasing power of many affluent buyers (see Wall Street Journal and Financial Times articles on point); and iii) very limited remaining "move-in" ready homes in the Cocoplum neighborhood that do not require substantial renovation nor fall into another price point (ie, $18 – 20M+ for brand new homes).

*Actives (New)*
This category of homes are included for contextual purposes only. They represent homes that are of similar sizes and waterfront conditions (if not superior) to that of the Subject Property, but are what one would consider "fully renovated" or ground-up "new construction". This category would represent pricing / SF ($2,802) and gross prices that are out of reach of the Subject Property, yet their inclusion is instructive for one to understand what pricing a buyer would need to budget for a completely new home in Cocoplum on the water.

3

**V. Conclusion**

The Subject Property represents somewhat of a "sweet spot" in pricing within the Cocoplum neighborhood. It is of similar size of many waterfront comparables with direct bay / ocean access; yet has a fully renovated second level along with many improvements throughout the remainder of the house – this renders the house in great "move-in" ready condition, saving valuable time and expense to potential homebuyers. Such houses that are "dated" trade at a discount, and, alternatively, those that are "fully renovated" or "new construction" trade at a significant premium to the suggested pricing of the Subject Property.

In consideration of all of the above, and within the attached analysis, it is our belief that the Subject Property will trade within a range of **$7.833M – $8.284M**. Giving some range for buyer negotiations, we are supportive of the listing price arrived at with the consultation of my broker of **$8,495,000**.

Respectfully submitted,

Jennie Frank Kapoor
Licensed Florida Real Estate Associate
Boschetti Realty Group

4

**Comparative Market Analysis**  As of 03.19.24
Prepared by Jennie Frank Kapoor

### Subject Property

| Address | Asking Price | | $ / SF | Year Built | Bed | Bath | AC SF | Outside SF | Total SF | Lot Size | Listed Date | Condition | Link | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7233 Los Pinos Blvd | $ | 8,495,000 | $ 1,400 | 1983 | 5 | 7 | 6,069 | | 6,069 | 17,424 | | Recently Renovated | 7233 Los Pinos Blvd | On canal. 2nd floor fully renovated; 1st floor fully updated. |

### CMA Imputed Valuations

| Address | Asking Price | | $ / SF | Year Built | Bed | Bath | AC SF | Outside SF | Total SF | Lot Size | Listed Date | Condition | Link | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7233 Los Pinos Blvd | $ | 8,025,403 | $ 1,322 | 1983 | 5 | 7 | 6,069 | | 6,069 | 17,424 | | Recently Renovated | 7233 Los Pinos Blvd | Price based on 113 Gavilan Ave comp. |
| 7233 Los Pinos Blvd | $ | 7,833,898 | $ 1,291 | 1983 | 5 | 7 | 6,069 | | 6,069 | 17,424 | | Recently Renovated | 7233 Los Pinos Blvd | Price based on average $ / sf of sold comps. |
| 7233 Los Pinos Blvd | $ | 8,284,452 | $ 1,365 | 1983 | 5 | 7 | 6,069 | | 6,069 | 17,424 | | Recently Renovated | 7233 Los Pinos Blvd | Price based on average $ / sf of relevant comps at 90% list to sales ratio. |

### Actives (Relevant Reno)

| Address | Asking Price | | $ / SF | Year Built | Bed | Bath | AC SF | Outside SF | Total SF | Lot Size | Listed Date | Condition | Link | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7801 Los Pinos Blvd | $ | 8,975,000 | $ 1,487 | 1991 | 6 | 7 | 6,034 | | 6,034 | 32,670 | 3/17/24 | Recently Renovated | 7801 Los Pinos Blvd | Dry lot. 3/4 acre lot. |
| 285 Costanera Rd | $ | 9,250,000 | $ 1,866 | 1989 | 6 | 7 | 4,957 | 917 | 5,874 | 16,117 | 1/22/24 | Updated | 285 Costanera Rd | On wide canal. |
| 430 Costanera Rd | $ | 11,500,000 | $ 1,541 | 1983 | 7 | 9 | 7,462 | | 7,462 | 26,571 | 3/18/24 | Dated | 430 Costanera Rd | On wide canal. No impact windows. Just over 1/2 acre. |
| 322 Costanera Rd | $ | 7,900,000 | $ 1,450 | 1987 | 6 | 6 | 5,450 | 1,926 | 7,376 | 15,246 | 12/9/23 | Updated | 322 Costanera Rd | On canal. Partial impact windows. |
| 7333 Vistalmar St | $ | 6,750,000 | $ 1,239 | 1980 | 6 | 6 | 5,446 | 1,867 | 7,313 | 20,037 | 3/4/24 | Updated | 7333 Vistalmar St | Dry lot. |

### Active (New)

| Address | Asking Price | | $ / SF | Year Built | Bed | Bath | AC SF | Outside SF | Total SF | Lot Size | Listed Date | Condition | Link | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 284 Las Brisas Ct | $ | 14,900,000 | $ 2,848 | 2023 | 5 | 5 | 5,231 | | 5,231 | 16,988 | 8/24/23 | Fully Renovated | 284 Las Brisas Ct | On waterway, no bridge to bay. |
| 361 Los Pinos Pl | $ | 17,990,000 | $ 2,166 | 2023 | 5 | 8 | 8,305 | | 8,305 | 23,522 | 3/6/24 | New Construction | 361 Los Pinos Pl | On wide canal. |
| 291 Costanera Rd | $ | 21,000,000 | $ 3,390 | 2024 | 6 | 8 | 6,194 | 3,668 | 9,862 | 16,117 | 11/5/23 | New Construction | 291 Costanera Rd | On wide canal. Under construction. |

### Pending / Under Contract

| Address | Asking Price | | $ / SF | Year Built | Bed | Bath | AC SF | Outside SF | Total SF | Lot Size | Listed Date | Condition | Link | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7300 Los Pinos Blvd | $ | 7,450,000 | $ 1,347 | 1990 | 6 | 6 | 5,530 | 886 | 6,416 | 20,908 | 10/10/23 | Fully renovated | 7300 Los Pinos Blvd | Contingent 2/14/24. Dry lot. |
| 7111 Los Pinos Blvd | $ | 6,300,000 | $ 966 | 1994 | 7 | 10 | 6,521 | 2,188 | 8,709 | 19,602 | 9/27/23 | Dated | 7111 Los Pinos Blvd | Contingent 3/7/24. On canal. |
| 152 Paloma Dr | $ | 11,995,000 | $ 2,087 | 1995 | 5 | 6 | 5,747 | | 5,747 | 13,068 | 3/15/23 | Fully Renovated | 152 Paloma Dr | Under contract 3/1/24. On canal. |

### Sold

| Address | Sold Price | | $ / SF | Year Built | Bed | Bath | AC SF | Outside SF | Total SF | Lot Size | ToM (Days) | Condition | Link | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 113 Gavilan Ave | $ | 7,950,000 | $ 1,322 | 1995 | 5 | 6 | 6,012 | 2,483 | 8,495 | 14,018 | 213.00 | Updated | 113 Gavilan Ave | On canal. Sold 3/31/23. |
| 168 Paloma Dr | $ | 6,750,000 | $ 1,296 | 1991 | 5 | 5 | 5,209 | 2,194 | 7,403 | 17,424 | 60.00 | Dated | 168 Paloma Dr | On canal. Sold 10/16/23. |
| 7223 Monaco St | $ | 6,600,000 | $ 1,245 | 2001 | 5 | 6 | 5,302 | 2,065 | 7,367 | 21,780 | 216.00 | Updated | 7223 Monaco St | Dry lot. Sold 3/30/23. |
| 7220 Los Pinos Blvd | $ | 8,900,000 | $ 1,300 | 2008 | 8 | 8 | 6,845 | 1,784 | 8,629 | 18,730 | 30.00 | Fully Renovated | 7220 Los Pinos Blvd | Dry lot. Sold 4/8/22. |